BEFORE THE THIRD DIVISION, NOVEMBER 17, 1948

**No. 52693.**—E. L. Stivers and Melba B. Rodriguez *v.* United States, petitions 6578–R and 6579–R (Laredo).

CLINE, Judge: These are petitions for the remission of additional duties accruing under section 489 of the Tariff Act of 1930 due to the undervaluation of merchandise.

The merchandise consisted of bobby pins imported from Mexico. The shipment covered by petition No. 6578–R was invoiced at 15 pesos per carton plus packing and stamps, entered at 18 pesos per carton plus packing and stamp tax, and appraised at 25 pesos per carton, less freight, aforo, Mexican customs broker's fee, and consular invoice fee. On appeal for reappraisement, it was held on the basis of a stipulation of counsel that the correct dutiable value was 19.25 pesos a great gross, plus sales tax. *E. L. Stivers* v. *United States*, 17 Cust. Ct. 257, Reap. Dec. 6291.

The shipment covered by petition No. 6579–R was invoiced at 15 pesos per carton and entered and appraised at 15 pesos per carton plus stamps. On appeal for reappraisement, it was held on the basis of a stipulation of counsel that the

correct dutiable value was 19.25 pesos a great gross, plus sales tax. *United States v. Melba B. Rodriguez (Valley Made Potato Chip Co.)*, 17 Cust. Ct. 256, Reap. Dec. 6290.

At the trial E. L. Stivers testified that he was a potato chip manufacturer; that he handled other articles, such as Mexican candy, chewing gum, peanuts, cheese sandwiches, shrimp; that Melba B. Rodriguez is a customhouse broker at Hidalgo, Tex.; that she acted for him as broker; that the merchandise covered by both petitions consisted of bobby pins, seconds, made of steel; that he arranged for the purchase of the bobby pins under the following circumstances: On a visit to Monterrey in April 1943, he met Bejos Kalifa and during a conversation regarding items in short supply, they conceived the idea of importing some bobby pins; that after he returned to the United States, Mr. Kalifa telephoned from Monterrey and said he could purchase some pins in Mexico City for 15 pesos a great gross; that 2 or 3 days later he called again and said he would have to make a trip to Mexico City, that his expenses would be high, that he would have to have his expenses, plus a commission of 3 pesos a great gross, and that this would amount to 10 pesos. The witness stated that he told Mr. Kalifa to go ahead as long as the expenses and commission did not exceed 10 pesos; that the first shipment arrived in Reynosa, Mexico, on the 1st or 2d of September 1943; that he contacted Mr. Kalifa there and was told that everything was in order and that there had not been any change in market price; that he gave the papers to Mrs. Rodriguez and asked her to make the entry; that he told her what he had done to obtain the foreign value.

Mr. Stivers testified further that about the 15th of November he visited the customhouse in Hidalgo and talked to customs officials there to find out if they knew any market value, but they did not; that about the 20th of November he made a trip to Monterrey and visited four or five places to see if he could buy any bobby pins; that they did not have any pins to offer; that he found one place where they told him they could sell him 10,000 great gross of bobby pins through their office in Mexico City for 15 pesos a great gross; that they had no catalog showing prices and would not give him a letter stating them unless he put up a 25 per centum deposit; that on his return he stopped at the customhouse and told customs officials there what he had learned.

The witness testified that the rest of his shipment arrived in Reynosa about December 1 or 2; that he contacted Mr. Kalifa and was told that there had been no change in prices or conditions since the pins were ordered in May; that he brought the papers to Mrs. Rodriguez and told her what he had done to find market value. Mr. Stivers stated that at the time of making the entries he did not possess any knowledge or information of a foreign or export value other than that at which the entries were made; that he prosecuted appeals for reappraisement, and the values were adjusted with the Government; that he had no intention of defrauding the revenue, concealing or misrepresenting the facts, or deceiving the appraiser as to the value of the merchandise; that he submitted all the facts and information and records in his possession; that he cooperated with the customs officials and followed their suggestions.

On cross-examination Mr. Stivers testified that he had written Mr. Kalifa a letter in regard to the purchase; that it was delivered to customs officials and that he did not know what had happened to the copy; that he paid Mr. Kalifa 25 pesos per great gross; that he did not remember whether he told Mrs. Rodriguez about the 10 pesos extra expense he was incurring; that he did not believe he had told customs officials that he was paying Mr. Kalifa 10 pesos per great gross over and above the entered price of 15 pesos per great gross; that it was not until an investigation was made by the customs agent that the payment of the 10 pesos was disclosed.

On redirect examination Mr. Stivers stated that Mr. Kalifa was his buying agent and that he paid his expenses and a commission.

Melba B. Rodriguez called as a witness for the petitioners testified that she is a customhouse broker; that she made the entries in these cases; that when the first entry was made she asked Mr. Stivers if he knew anything about the prices of bobby pins as she was totally unfamiliar with them; that he said that Mr. Kalifa had brought the pins up and he had talked to him and asked him if there had been any change of price; that before she prepared the entry she submitted a request for information to the acting appraiser; that the merchandise was appraised as entered on the first entry. In connection with the second entry, she stated that she asked Mr. Stivers if he had any further information as to the price; that he told her of the trip he had made to Monterrey in November; that he said he had talked to Mr. Kalifa that morning and he had said that there had been no change in prices; that she prepared the papers and a request for information; that the appraiser had no value so entry was made at 15 pesos; that a few days later her husband was in the office of a broker in Reynosa and saw an invoice there wherein Mr. Kalifa had invoiced bobby pins at 18 pesos; that she went over later and saw this invoice; that she called Mr. Stivers and told him what she had found; that thereafter they went to the customs office and explained the situation; that Mr. Williamson, deputy collector, said it would be all right to go ahead and amend the entry; that she did so.

On cross-examination Mrs. Rodriguez stated that Mr. Stivers never mentioned to her the fact that he was paying Mr. Kalifa 10 pesos over and above the 15 pesos reflected in the entry; that if she had known about it she would have advised Mr. Stivers to show those charges on the entry; that she would have communicated the fact to the customs officials at the time she made the entry; that she first learned that an extra 10 pesos was being paid after she was notified that the cases would be brought to court.

At a subsequent hearing, Mr. Stivers was recalled and testified that he had searched for the copy of the letter he had sent to Mr. Kalifa in connection with the purchase of the bobby pins and that he had found the same in the file of his former attorney. The copy was then received in evidence as petitioners' exhibit 3. It contains the following statement:

In reply to your offer of 10,000 ten thousand cartons of Pineret Clips—(Seconda), each carton containing 1728 Clips at $15.00 FIFTEEN PESOS a carton, I am willing to buy them providing you deliver the merchandise at the Border at Hidalgo, Texas, furnished with the American Consular Visa and the Mexican Export Permit.

Mr. Stivers repeated the circumstances of his purchase and stated that between the time of his talks with Mr. Kalifa and the time of the first entry he saw Mr. Clark, deputy collector at Hidalgo; that he told Mr. Clark he was planning to bring in some bobby pins and asked him for the procedure; that Mr. Clark told him the value of the pins would be shown on the American consular invoice; that he asked him about the commission and other expenses but he said all the Government was interested in was the value of the merchandise; that in not disclosing the 10 pesos expenses paid to Mr. Kalifa to his broker or to customs officials at the time of entry, he was following the instructions of Mr. Clark; that Mr. Clark handled the first entry and passed it at the entered value. He stated further that his failure to disclose was not done with any intent to defraud the revenue, conceal or misrepresent the facts, or hide anything from customs officials.

The petitioners also offered in evidence as petitioners' collective exhibits 1 and 2, letters addressed to the collector of customs at Laredo by Benjamin S. White, Jr., customs agent, one in connection with petition No. 6578–R and the other in

connection with petition No. 6579–R. According to these letters an investigation was made at the office of Mr. Stivers and it was disclosed that he had placed an order with Mr. Kalifa for the purchase of 10,000 great gross of bobby pins at 25 pesos per great gross; that the agreed price was 15 pesos per great gross and an additional 10 pesos to cover his commissions and other charges and expenses incidental to delivering the merchandise in the United States. The letters also state that when Mr. Kalifa was interviewed, he confirmed the statements made by Mr. Stivers relative to the selling price of the bobby pins; that he admitted he had purchased the bobby pins for 18 pesos per great gross and that he had sold them to Mr. Stivers for 15 pesos, plus an additional 10 pesos to cover his profit and incidental expenses; that he was ignorant of the requirements for preparing a consular invoice; that he believed the correct unit value to be shown on the invoice was 15 pesos as that was the price he quoted to Mr. Stivers although he was to receive an additional 10 pesos. The letters conclude with the following statement:

The investigation in this case did not disclose that the entry of the merchandise involved, at a value less than the final appraised value, was made with a deliberate intent to defraud the revenue or to conceal or misrepresent the facts of the case, or to deceive the Acting Appraiser as to the value of the merchandise.

In the instant case it appears that the petitioner E. L. Stivers did not disclose to customs officials or to his broker at the time of entry the fact that he was paying his agent 10 pesos for expenses and commission over and above the agreed price of 15 pesos. However, there is uncontradicted testimony to the effect that Mr. Stivers had consulted Mr. Clark, deputy collector at Hidalgo, and disclosed to him that there were commissions and expenses, but had received the impression that the Government was not interested in them. Between the first and second entries, Mr. Stivers made a special trip to Monterrey to ascertain the market price of bobby pins and reported to customs officials the result of his investigation. Furthermore, when his broker discovered an invoice of bobby pins at a higher price, this fact was immediately told to customs officials. An investigation was subsequently made by customs agent Benjamin S. White, Jr., and he reported that there was no deliberate intent to defraud the revenue, conceal or misrepresent the facts of the case, or deceive the appraiser. Under these circumstances, we do not think the failure to disclose the payment of the additional 10 pesos is evidence of a lack of good faith on the part of the importers.

We hold, therefore, that the petitioners, in making the entries in these cases, acted without intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petitions are granted. Judgment will be rendered accordingly.